# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Civil Action No.: 3:25-cv-00102-MOC-WCM

FS MEDICAL SUPPLIES, LLC,

        Plaintiff,

   v.

TANNERGAP, INC., TANNER PHARMA
UK LIMITED, RAYMOND FAIRBANKS
BOURNE, AKA "BANKS" BOURNE, AND
MARY EVERETT WHITEHURST
BOURNE, AKA "MOLLY" BOURNE,

        Defendants.

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION
## TO FEBRUARY 3, 2026 MEMORANDUM AND RECOMMENDATION TO
## DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................ii

INTRODUCTION ........................................................................................ 1

UNDISPUTED FACTS AND PROCEDURAL HISTORY ........................................ 3

MAGISTRATE JUDGE METCALF'S RECOMMENDATION ................................. 8

ARGUMENT ............................................................................................ 10

    A.    Section 1359 Applies to Tong's Membership Assignment to Mao ....... 11

    B.    Cases Addressing Appointments of Nominal Parties and
        Assignments of Claims Are Inapplicable ............................................. 16

    C.    FSMS's Merits Arguments Are Irrelevant and Incorrect .................... 21

CONCLUSION............................................................................................ 22

ARTIFICIAL INTELLIGENCE CERTIFICATION ................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airlines Reporting Corp. v. S and N Travel, Inc.,*
58 F.3d 857 (2d Cir. 1995)............................................................................... 13, 14

*Alix v. McKinsey & Co.,*
470 F. Supp. 3d 310 (S.D.N.Y. 2020) ....................................................................21

*Bianca v. Parke-Davis Pharm. Div. of Warner-Lambert Co.,*
723 F.2d 392 (5th Cir. 1984) ..................................................................................18

*Bishop v. Hendricks,*
495 F.2d 289 (4th Cir. 1974) ..................................................................................18

*Branson Label, Inc. v. City of Branson,*
793 F.3d 910 (8th Cir. 2015) ..................................................................................19

*Bugsby Prop. LLC v. Alexandria Real Est. Equities, Inc.,*
No. 19-CV-9290 (VEC), 2020 WL 1974147 (S.D.N.Y. Apr. 24, 2020)................. 3, 12

*Castillo Grand LLC v. Sheraton Operating Corp.,*
719 F.3d 120 (2d Cir. 2013)................................................................................. 9, 14

*Castillo Grand LLC v. Sheraton Operating Corp.,*
No. 09 CIV 7197 (RPP), 2010 WL 5298179 (S.D.N.Y. Dec. 23, 2010) ...................... 9

*Castillo Grand LLC v. Sheraton Operating Corp.,*
No. 09 CV 7197 (RPP), 2009 WL 4667104  (S.D.N.Y. Dec. 9, 2009) ........ 3, 9, 13, 14

*FS Medical Supplies, LLC v. Zhejiang Orient Gene Biotech Co., Ltd. &
Healgen Scientific, LLC,*
No. 25-BC11A-0012 (Bus. Ct. Tex., 11th Div.)......................................................22

*FS Medical Supplies, LLC v. Zhejiang Orient Gene Biotech Co., Ltd. &
Healgen Scientific, LLC,*
No. 4:25-cv-01332 (S.D. Tex.)................................................................................22

*Grupo Dataflux v. Atlas Global Group, L.P.,*
541 U.S. 567 (2004) ..................................................................................................9

*Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.,*
282 F.R.D. 146 (E.D. La. 2012)........................................................................... 3, 13

Case 3:25-cv-00102-MOC-WCM    Document 53    Filed 03/17/26    Page 3 of 29

*Ibrani v. Mabetex Project Engineering*,
No. C-00-01017 CRB, 2002 WL 1226848 (N.D. Cal. May 31, 2002)................ 14, 15

*In re Bestwall LLC*,
71 F.4th 168 (4th Cir. 2023) ................................................................ 18

*Kramer v. Caribbean Mills*,
394 U.S. 823 (1969) ................................................................ passim

*Lehigh Min. & Mfg. Co. v. Kelly*,
160 U.S. 327 (1895) ................................................................ 20

*Lester v. McFaddon*,
415 F.2d 1101 (4th Cir. 1969) ................................................ passim

*Long & Foster Real Est., Inc. v. NRT Mid-Atl., Inc.*,
357 F. Supp. 2d 911 (E.D. Va. 2005) ................................................ 16, 20

*Miller & Lux v. E. Side Canal & Irrigation Co.*,
211 U.S. 293 (1908) ................................................................ 19, 20

*Pallazola v. Rucker*,
797 F.2d 1116 (1st Cir. 1986)................................................................ 18

*Prudential Oil Corp. v. Phillips Petroleum Co.*,
546 F.2d 469 (2d Cir. 1976)................................................................ 21

*Tee Feral Golf, LLC v. MJM Golf, LLC*,
No. 21-1648, 2022 WL 17546943 (4th Cir. Dec. 9, 2022)........................... 16, 19, 21

*Toste Farm Corp. v. Hadbury, Inc.*,
70 F.3d 640 (1st Cir. 1995) ................................................................ 19

## Statutes

28 U.S.C. § 41(1) (1940) ................................................................ 11

28 U.S.C. § 1332(c)(2) ................................................................ 17

28 U.S.C. § 1359................................................................ passim

Pub. L. No. 100-702 § 202................................................................ 17

## Other Authority

13F Arthur R. Miller, *Federal Practice & Procedure* § 3639 (3d ed. 2025) .............. 11

**Rule**

Fed. R. Civ. P. 12(b)(1).................................................................................................. 3, 16

Case 3:25-cv-00102-MOC-WCM     Document 53     Filed 03/17/26     Page 5 of 29

## INTRODUCTION

Section 1359 of the Judicial Code states that a "district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. On February 10, 2025, after years of prosecuting two actions in this Court, FSMS revealed that one of its members, Zhen Zhen Tong ("Tong"), was a Chinese citizen. Because FSMS is an LLC that takes the citizenship of each of its members, Tong's citizenship destroyed FSMS's claim of diversity jurisdiction. Realizing that its two actions would be dismissed, FSMS's counsel engineered an overnight "fix" to manufacture federal jurisdiction. Tong assigned her membership interest to her husband, Jim Mao ("Mao"), a California citizen, which reconfigured FSMS into an LLC with only U.S. citizen members, and FSMS filed a new lawsuit.

The next morning, without notice to or leave of the Court, FSMS filed this new action. Its complaint pled the claims pending in both earlier actions while re-asserting claims this Court had already dismissed and adding new claims. FSMS thus attempted, in one maneuver, to cure its jurisdictional defect, reverse the Court's prior dismissals, circumvent the Court's decision to defer consolidation of the earlier actions, and add yet more claims – all without leave of Court.

After a thorough analysis of Defendants' motions to dismiss and a hearing, Magistrate Judge Metcalf recommended that this third action – which he termed

"FSMS III" – be dismissed because FSMS had violated section 1359 by fabricating diversity jurisdiction through an assignment.[1]

FSMS concedes that Tong assigned her interest to Mao only to create diversity. FSMS's counsel flatly admitted as much in court on February 11, 2025, saying he filed *FSMS III* to "moot out the jurisdictional issue." FSMS III, Dkt. No. 27, Ex. A, at 3-4;[2] *see also* FSMS III, FSMS Omnibus Opp., Dkt. No. 37, at 29 (stating the assignment was made to "enable FSMS to continue to pursue its claims against Tanner . . . in the Western District of North Carolina"). Having admitted that Tong transferred her interest to Mao to manufacture jurisdiction, FSMS presented a patchwork of arguments to Magistrate Judge Metcalf to try to salvage its claims. Now, FSMS dusts off, revises, and repeats some (but not all) of the same invalid arguments in its Objection.

FSMS's arguments crumble upon examination. Courts have uniformly rejected cramped and technical readings of section 1359 after *Kramer v. Caribbean Mills*, where the Supreme Court focused on the "statute's purpose" of preventing the "manufacture of Federal jurisdiction." 394 U.S. 823, 828-29 (1969). Tellingly, FSMS cites no case post-dating *Kramer* that is materially similar to this action where a court has sustained jurisdiction after a section 1359 challenge. To the contrary, all three federal court decisions directly on point have concluded that section 1359 applies to transfers of ownership interests in a limited liability company for the

---

[1] Defendants have used Judge Metcalf's terminology. FSMS refers to its three actions in this Court as Tanner I, Tanner II, and Tanner III.

[2] Page number references are to the ECF stamped page number, not to the original brief page number.

2

purpose of creating federal jurisdiction. *See Bugsby Prop. LLC v. Alexandria Real Est. Equities, Inc.*, No. 19-CV-9290 (VEC), 2020 WL 1974147, at \*6 (S.D.N.Y. Apr. 24, 2020); *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.*, 282 F.R.D. 146, 157 (E.D. La. 2012); *Castillo Grand LLC v. Sheraton Operating Corp.*, No. 09 CV 7197 (RPP), 2009 WL 4667104, at \*7 (S.D.N.Y. Dec. 9, 2009). Judge Metcalf's Recommendation correctly applies section 1359 to the conceded facts. Defendants respectfully ask this Court to overrule FSMS's Objection, adopt Judge Metcalf's Recommendation, and dismiss this action for lack of subject matter jurisdiction.

## UNDISPUTED FACTS AND PROCEDURAL HISTORY[3]

As the Recommendation notes, this is the fourth action FSMS has filed against one or more of these Defendants. First, FSMS sued TannerGAP, Inc. and Tanner Pharma UK Limited ("TPUK") (collectively, "the Tanner Defendants") in California state court. In that case, FSMS alleged that it was "a Delaware limited liability company with its principal place of business in the County of Parker, State of Texas" and that it "had its principal place of business in the County of Santa Clara, State of California." FSMS III, Dkt. No. 29, Ex. A, Cal. Compl. ¶ 1. FSMS did not identify its members or their citizenship. Based on these allegations, the Tanner Defendants removed the action based on diversity. *Id.*, Ex. B, Notice of Removal. The district

---

[3] FSMS's Objection contains a "Factual Background" section purporting to describe allegations in its complaint and evidence produced in discovery. Obj. at 3-6. Defendants strongly dispute FSMS's characterizations of the allegations and evidence, but do not address them here because they have no bearing on the Rule 12(b)(1) issue before the Court. Defendants respectfully refer the Court to the "Background" section of the Tanner Defendants' Rule 12(b)(6) Motion for a concise discussion of the factual allegations and evidence cited by FSMS. FSMS III, Dkt. No. 29, at 8-13.

court issued a show cause order regarding FSMS's citizenship to the Tanner Defendants. *Id.*, Ex. C, Show Cause Order.

The Tanner Defendants' counsel then filed two declarations detailing their efforts to determine FSMS's citizenship. They hired a private investigator, reviewed publicly available documents, and, crucially, sought confirmation of FSMS's citizenship directly from FSMS's counsel. *Id.*, Ex. D, Piper Waldron Decl. ¶¶ 3-7; *see also id.*, Ex. E, Ernest Brod Decl. ¶¶ 2, 4. Indeed, a week before the show-cause deadline, the Tanner Defendants' counsel emailed FSMS's counsel asking him to "confirm plaintiff's citizenship." *Id.*, Ex. D, Piper Waldron Decl., Ex. C at 2. When FSMS's counsel responded to this request, he said he was "not 100% clear what it is that you need from us." *Id.*, Ex. D, Piper Waldron Decl., Ex. C at 1. The Tanner Defendants' counsel responded that she wanted to "confirm the citizenship of FS Medical Supplies, LLC" and asked, "[t]o the extent there are members of the LLC other than Mr. Cagan, please advise on [their] citizenship . . . as well." *Id.* FSMS's counsel did not respond to the email, even after the Tanner Defendants' counsel reminded him of the show-cause deadline. *Id.*, Ex. D, Piper Waldron Decl. ¶¶ 7-8. He also refused over the phone to provide the requested information. *Id.*

FSMS then filed a certification disclosing for the first time that FSMS had four members – Laird Cagan, Jim Mao, Zhen Zhen Tong, and Sherry Cagan – but not their respective citizenships. *Id.*, Ex. F, FSMS Disclosure. The Tanner Defendants filed a supplemental response stating that, based on additional investigation of this information, the four members were "completely diverse from TannerGAP and

4

[TPUK]." *Id.*, Ex. G, Tanner Defs.' Supp. Resp. at 2. As to Tong, the response stated that available information indicated she resided in California, and thus she was "domiciled in, and . . . [a] citizen[] of, the State of California." *Id.*, Ex. G, at 4. The court invited FSMS to respond, *id.*, Ex. H, Clerk's Notice, but FSMS never did. *Id.*, Ex. I, California Case Docket. The California court dismissed the action for lack of personal jurisdiction. *Id.*, Ex. J, Dismissal Order.

In September 2021, FSMS filed a new action in this Court against the Tanner Defendants ("FSMS I"), invoking diversity jurisdiction and stating falsely that the "members of FSMS are all individuals who are citizens of either California or Texas." FSMS I, Dkt. No. 1, ¶ 2. FSMS later amended its complaint, again invoking the Court's diversity jurisdiction, identifying its members as Laird Cagan, Jim Mao, and their spouses, who were purportedly "domiciled in Texas" (the Cagans) and "domiciled in California" (Mao and Tong). FSMS I, Dkt. No. 58, ¶ 7.

In September 2023, FSMS filed its third lawsuit, the second one in this Court ("FSMS II"), asserting voidable transfer claims against TPUK and the Bournes. FSMS II, Dkt. No. 1. FSMS filed a Rule 7.1 certification affirmatively representing that its four owners were citizens of Texas and California (a filing FSMS omits from its Objection). FSMS II, Dkt. No. 3. As its cases progressed, FSMS resisted all of Defendants' attempts to obtain discovery about the formation of FSMS, FSMS III, Dkt. No. 29, Ex. K, FSMS's Resp. Tanner Defs. RFPs, No. 27, at 3-4, and rebuffed a subpoena of Tong as "vexatious and harassing." *Id.*, Exs. L-M, Romeo Letters.

Judge Conrad dismissed several of FSMS's claims and consolidated FSMS I and FSMS II for discovery only, reserving its decision on whether the cases should be consolidated for trial. FSMS I, Dkt. Nos. 117, 165; FSMS II, Dkt. No. 82. Then, three days before discovery closed, FSMS tried to sidestep the Court's orders by moving to amend its complaint in FSMS I to reassert a previously dismissed claim, assert all claims from FSMS II in FSMS I (effectively consolidating the actions), and add new claims. FSMS I, Dkt. No. 239. FSMS's factual assertions addressing its members' citizenship stated, as relevant here, "Mr. Mao and his spouse are domiciled in and citizens of California." FSMS I, Dkt. No. 240 ¶ 7. Defendants opposed FSMS's motion to amend (FSMS I, Dkt. Nos. 259, 260), and Judge Metcalf set a hearing for February 11, 2025. FSMS I Min. Order (1/7/25); FSMS I, Dkt. No. 281.

The afternoon before the hearing, FSMS's counsel emailed defense counsel and asked for an immediate meeting. On a call, FSMS's counsel revealed that Tong was a citizen of China, not California, despite its past certifications otherwise. That evening, defendants moved to dismiss FSMS I and FSMS II for lack of subject matter jurisdiction because Tong's foreign citizenship meant diversity did not exist, and never had. FSMS I, Dkt. No. 294; FSMS II, Dkt. No. 104. Both cases have now been dismissed and are on appeal. FSMS I, Dkt. No. 316, FSMS II, Dkt. No. 123.

At the February 11 hearing, FSMS's counsel revealed to the Court his failure to verify his client's citizenship:

> Mr. Yalowitz: We quite recently discovered that we had a factual mistake in our understanding of the citizenship of one of the members of the plaintiff. That member is named Zhen Zhen Tong. She's the spouse of Jim Mao. She, we had understood, was a citizen – U.S. citizen

living in California. In fact, she is, I discovered, a nonresident permanent, you know, green card holder . . . .[4]

FSMS III, Dkt. No. 27, Ex. A, at 3. FSMS's counsel then frankly admitted that:

> . . . what we have done today is, number one, Ms. Tong has transferred her shares in the LLC to Mr. Mao. So the LLC now has three members, not four, and the three members are all U.S. citizens living in Texas and California. So sitting here today, there is diversity of citizenship between all the parties.
>
> <div align="center">***</div>
>
> So in order to resolve it and salvage all the work that you've done and Judge Conrad has done, we are – we have filed our amended complaint as a new action today.

*Id.* at 3-4. FSMS's counsel asserted that he had purportedly "fixed" the subject matter jurisdiction defect by engineering the transfer of Tong's membership interest in FSMS to her husband. *Id.* at 7 ("Had we known at the outset [when the cases were filed] we would have fixed it earlier . . ."). FSMS's counsel also admitted that FSMS's complaint in this action is materially identical to the proposed amended complaint that FSMS had sought (but not received) leave to file in FSMS I. *Id.* at 5-6; *see also* FSMS I, Dkt. No. 240, Ex. A.

Defendants moved to dismiss this action for multiple reasons, including lack of subject matter jurisdiction because Tong's assignment violated section 1359. Even after Defendants moved to dismiss, FSMS repeatedly confirmed that the purpose of transferring Tong's membership interest was to try to remedy the jurisdictional defect. In a filing in FSMS I and FSMS II, FSMS argued, "[f]ortunately, this Court's

---

[4] FSMS's counsel also described Ms. Tong as a "nonresident alien," which was presumably a mistaken characterization in light of his repeated assurances that she is a "green card holder." A green card holder is a resident alien.

<div align="center">7</div>

ability to resolve this dispute has been preserved with the filing of a new complaint ([FSMS III]) after the non-diverse member transferred her interest to her husband, Jim Mao, a pre-existing member of the LLC." FSMS I, Dkt. No. 297, at 13-14; FSMS II, Dkt. No. 107, at 13-14. And FSMS repeated this point during the October 27, 2025 hearing when Judge Metcalf asked:

Q. "[W]hat I'm hearing you say – and tell me if I'm hearing this wrong – is, yeah, it may have been that the plaintiff in this case intentionally changed the citizenship of the – or the citizenship of the entity was changed for the very purpose of rescuing jurisdiction, and that doesn't matter . . . ."

A. "That is – that is what I'm saying, your Honor. That is exactly what I'm – you said it better than I did."

FSMS III, Dkt. No. 47, Hearing Tr. at 41:13-21. Moreover, FSMS now admits it is a defunct LLC that exists only to pursue this litigation, implicitly confirming that the assignment was solely to fabricate diversity. FSMS III, Dkt. No. 27, Ex. B, Cagan Dep. 13:8-18 (October 29, 2024).

## MAGISTRATE JUDGE METCALF'S RECOMMENDATION

After a hearing in October, Judge Metcalf recommended dismissal of FSMS III under section 1359. Judge Metcalf first reviewed the jurisprudential history of section 1359, starting with the Supreme Court's seminal decision in *Kramer*. M&R at 5. He identified several factors that courts examine to determine whether section 1359 applies, including: the intent of the plaintiff; presence of a non-jurisdictional purpose for the challenged assignment; timing of the assignment; consideration for the assignment; nature of the assignment (full or partial); and whether the assignor retained an interest in the action. *Id*. at 5-10. After taking all the factors into account,

Judge Metcalf highlighted FSMS's admitted intention to create diversity by Tong's assignment to Mao and its failure to assert that there was any legitimate business reason for the assignment, concluding that "[c]aselaw indicates that this is the type of action that Section 1359 prohibits." *Id.* at 10-12 (citing numerous cases).

Judge Metcalf rejected FSMS's argument that "dropping a non-diverse LLC member" does not violate section 1359. *Id.* at 12. In making this argument, FSMS relied on *Castillo Grand LLC v. Sheraton Operating Corp.*, 719 F.3d 120 (2d Cir. 2013).[5] In *Castillo*, the district court dismissed a lawsuit under section 1359 because the plaintiff LLC tried to create diversity in materially the same way as FSMS did here – by removing the non-diverse members from the LLC's ownership structure. 2009 WL 4667104, at *4 & n.4. The *Castillo* district court also awarded attorney's fees to the defendant. *Castillo Grand LLC v. Sheraton Operating Corp.*, No. 09 CIV 7197 (RPP), 2010 WL 5298179, at *3 (S.D.N.Y. Dec. 23, 2010).

The *Castillo* plaintiff chose to proceed with its claims in state court and appealed only the attorney's fees order. Rejecting FSMS's insistence that the Second Circuit decision supported FSMS's position, Judge Metcalf noted that the appellate court addressed and resolved only the attorney's fees issue (concluding that the plaintiff did not act in bad faith) but "did not 'rule definitively' on the parameters of Section 1359." M&R at 16-17 (quoting *Castillo*, 719 F.3d at 126). Judge Metcalf concluded that the *Castillo* district court had properly interpreted and applied section

---

[5] FSMS also relied on *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). FSMS has abandoned reliance on *Grupo Dataflux*, which is not cited in its Objection, so Defendants do not address that case here.

1359 in dismissing the lawsuit, even if it had erred in ordering attorney's fees. *Id.* at 17-19.

Judge Metcalf also considered FSMS's argument that "its status as a bona fide plaintiff preclude[d] application of Section 1359 even if the Assignment was undertaken for the purpose of creating diversity jurisdiction." *Id.* at 12 n.6. Judge Metcalf rejected this argument, noting that FSMS was relying on an out-of-context quote from Wright & Miller and a 1928 decision that "has been greatly diminished [by] cases decided more recently" and has been "the target of universal condemnation" with "doubt . . . cast on its continuing validity." *Id.*

Judge Metcalf held that "a finding that the Assignment – a transaction that was 'easy to arrange and involve[d] few disadvantages' to FSMS," *id.* at 18 (quoting *Kramer*, 394 U.S. at 828), "that occurred between a husband and wife the day before FSMS III was filed," and "that was completed for the purpose of creating diversity jurisdiction where none had existed – is prohibited by Section 1359 is consistent with *Kramer* as well as the approach taken by other courts." *Id.* at 18. Judge Metcalf therefore recommended dismissal. *Id.* at 19.

## **ARGUMENT**

FSMS urges this Court to embrace an interpretation of section 1359 that tortures its plain meaning and disregards decades of precedent following the Supreme Court's decision in *Kramer* where the Court explained that the "statute's purpose" is to prevent the "manufacture of Federal jurisdiction." 394 U.S. at 828-29. Congress enacted what is now section 1359 in the 1948 revision to the Judicial Code

10

to address flaws in prior statutes, which were both too broad and too narrow. 13F Arthur R. Miller, *Federal Practice & Procedure* § 3639 (3d ed. 2025). As the *Kramer* Court recognized, in revising the statute, Congress intended to prevent the manufacture of federal jurisdiction by any means, eschewing the technical language of and jurisprudence interpreting the former 28 U.S.C. § 41(1) (1940), which dated back to the Judiciary Act of 1789 and had produced anomalous outcomes. *Kramer*, 394 U.S. at 825-26 & n.3.[6] Indeed, the Supreme Court specifically rejected earlier decisions that adopted an overly technical interpretation of section 1359, explaining that section 1359 should be interpreted with a focus on whether a transaction was "improperly or collusively made" to create federal jurisdiction because the "manufacture of Federal jurisdiction was the very thing which Congress intended to prevent when it enacted section 1359 and its predecessors." *Id.* at 827-29.

A.    Section 1359 Applies to Tong's Membership Assignment to Mao

Brushing aside the Supreme Court's instructions in *Kramer*, FSMS asserts that the words "made or joined" in section 1359 "do not encompass the transfer of a membership interest in a pre-existing LLC." Obj. at 10. FSMS argues that, as a pre-existing LLC, it was neither newly created nor "made to become a party." *Id.* at 10-12. FSMS's argument fails for several reasons.

First, the text of section 1359 refutes FSMS's argument. The statute applies where (1) a "party . . . has been . . . made . . . to invoke the jurisdiction of [the] court"; or (2) a "party . . . has been . . . joined to invoke the jurisdiction of [the] court." 28

---

[6] A comprehensive history of the statute is provided in Defendants' Reply Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction. FSMS III, Dkt. No. 39 at 9-12.

U.S.C. § 1359. FSMS's attempt to narrow the first clause to read "made to become a party" (Obj. at 11), instead of "made to invoke the jurisdiction," contravenes the text by adding words while ignoring others. As this case illustrates, there are more ways to "invoke jurisdiction" than by becoming a party. FSMS's members "made," or caused,[7] it to invoke jurisdiction by a collusive assignment from one member to another. Such a transaction falls well within the plain text of the statute.

Second, as FSMS admits (Obj. at 12), the only three cases (*Bugsby*, *Gulf Fleet*, and *Castillo*) to address the issue here have held that section 1359 applies to assignments of interests in LLCs for the purpose of creating diversity. *Bugsby*, *Gulf Fleet*, and *Castillo* each concluded that section 1359 applies to an assignment of an ownership interest in an LLC to create diversity.

In *Bugsby,* the court applied a presumption of collusion to an assignment of an ownership interest among closely related entities or individuals and to the reorganization of an LLC's membership structure. 2020 WL 1974147, at *3. The *Bugsby* Court concluded that one member's assignment of his ownership interest to another member was a "'sham transaction' done simply to manufacture diversity jurisdiction" in violation of section 1359. *Id*. at *5.[8]

---

[7] FSMS appears to agree that "[t]o cause" is one way to understand the meaning of "made" as used in the statute. Obj. at 13-14.

[8] Courts apply a presumption of collusion to related-party assignments, and a lack of consideration for that assignment further supports applying the presumption. *Bugsby*, 2020 WL 1974147, at *5 (noting that a transfer of a membership interest in an LLC among related entities was "also suspect because it appears it lacked consideration"). Here, of course, no presumption is needed where FSMS has confessed that the assignment was for the express purpose of creating diversity.

Likewise, in *Gulf Fleet*, the plaintiff LLC had a single owner, and the defendants challenged whether the district court had diversity jurisdiction. 282 F.R.D. at 150. In response to that challenge, the LLC's sole member transferred its membership interest to another LLC, converted that entity to a corporation, and filed a new lawsuit. *Id*. The district court held that because "one purpose of the chain of reorganization was to affect diversity jurisdiction" the "changes to Plaintiff's citizenship were improper or collusive in violation of section 1359." *Id*. at 157.

Similarly in *Castillo*, after three years of discovery, the district court dismissed an action for lack of diversity. 2009 WL 4667104, at *1. In response, two non-diverse members were removed from the LLC's ownership structure, and the plaintiff filed a new lawsuit. *Id*. at *1-2, *4 n.4. The district court held that it was "beyond dispute" that the plaintiff's reorganization was undertaken "to invoke the jurisdiction" of the district court even though the "law is clear . . . that transactions engineered by a party for the purpose of creating federal diversity jurisdiction are precisely the sort of conduct prohibited by § 1359." *Id*. at *2.

The district court in *Castillo* succinctly explained the flaw in FSMS's argument that section 1359 applies only when a non-diverse plaintiff assigns a claim to a diverse plaintiff: "Castillo's position is flatly contradicted by the plain language of the statute, which prohibits improper or collusive invocation of federal jurisdiction 'by assignment *or otherwise*,' 28 U.S.C. § 1359 (emphasis added), and the interpretation of that section by the Second Circuit as barring '*any agreement* whose primary aim is to concoct federal diversity jurisdiction.'" 2009 WL 4667104 at *3 (quoting *Airlines*

<div align="center">13</div>

*Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995)). As *Castillo* illustrates, section 1359 applies even where the same entity is the named plaintiff before and after the problematic assignment or transaction.

FSMS incorrectly argues that the Second Circuit later "reversed" *Castillo*. Obj. at 13. The issue of subject matter jurisdiction was not before the Second Circuit. The plaintiff only appealed the district court's attorney's fee award. 719 F.3d at 123. Accordingly, the Second Circuit considered only whether the district court properly ordered the plaintiff to pay the defendant's attorney's fees for filing an action in violation of section 1359. *Id.* The Second Circuit reversed the award, concluding that the plaintiff's position was not so frivolous as to warrant sanctions. *Id.* at 126. But the Second Circuit determined it need not resolve the merits of the subject matter jurisdictional issue in reversing the fee award and explicitly declined to determine whether section 1359 applies to transfers of interests in LLCs. *Id.* The Second Circuit held that the plaintiff could urge a narrow interpretation of section 1359 without being guilty of bad faith, while also recognizing that a broader reading of the statute supported the defendant. *Id.* The Second Circuit had no need, and did not attempt, to undertake a review of the legislative history of section 1359 or the case law interpreting that statute because the court did not rule on the applicability of section 1359 to transfers of LLC interests.

In sum, Judge Metcalf correctly recognized that the district court decisions in *Bugsby*, *Gulf Fleet*, and *Castillo* applied section 1359 in materially identical factual situations. M&R at 18-19. He also cited *Ibrani v. Mabetex Project Engineering*, No. C-

14

00-01017 CRB, 2002 WL 1226848 (N.D. Cal. May 31, 2002). There, the district court applied section 1359 when a partner in a partnership – governed by the same diversity rules as an LLC – attempted to renounce his ownership interest to create diversity. *Id.* at \*4. Judge Metcalf's conclusion is borne out by these specific, on-point cases and in the general jurisprudence and Fourth Circuit precedent construing section 1359.

Third, adopting FSMS's argument would create an absurd outcome here and in future cases. If FSMS were correct, section 1359 would ***never*** apply to transfers of interests in an LLC if no new entity is created, even when the transfer is admittedly for the sole purpose of creating diversity jurisdiction. By manipulating its ownership structure, any LLC could gain access to federal court in almost any case.

For example, an individual owner of an LLC could transfer his or her ownership interest to a "straw man" in a different state, in return for an assignment of the litigation proceeds. Under FSMS's interpretation of the statute, that transfer would be immune from scrutiny even if wholly artificial because the LLC would remain as the named plaintiff. FSMS's interpretation flouts the Supreme Court's instruction in *Kramer* that district courts should not allow jurisdiction manufactured by assignments "which are easy to arrange and involve few disadvantages for the assignor." 394 U.S. at 828. Unsurprisingly, neither the language of the statute nor the case law supports FSMS's interpretation.

Finally, FSMS's criticism of Judge Metcalf for relying on a "freewheeling multi-factor test" (Obj. at 12) forgets that FSMS itself asked Judge Metcalf to apply this

very multi-factor test. *Compare* FSMS III, FSMS Omnibus Opp., Dkt. No. 37, at 26-30 (citing factors from *Long & Foster Real Est., Inc. v. NRT Mid-Atl., Inc.*, 357 F. Supp. 2d 911, 922-23 (E.D. Va. 2005)) *to* M&R at 6 (citing factors from *Long & Foster*) *with* M&R at 9 (citing *Tee Feral Golf, LLC v. MJM Golf, LLC*, No. 21-1648, 2022 WL 17546943 (4th Cir. Dec. 9, 2022) and discussing the same six factors as FSMS). While the Court may not need to apply the multi-factor test here where FSMS has admitted that Tong assigned her interest to Mao to create jurisdiction, examining those factors confirms the obvious. Mao and Tong acted collusively in attempting to make FSMS a citizen only of California and Texas, and not of China, in their misguided attempt to fabricate diversity jurisdiction.

B.     Cases Addressing Appointments of Nominal Parties and Assignments of Claims Are Inapplicable

In its original Rule 12(b)(1) opposition, FSMS argued that section 1359 does not apply because FSMS is not a "sham plaintiff." FSMS III, FSMS Omnibus Opp., Dkt. No. 37 at 22-24. In objecting to the Recommendation, FSMS advances the same argument using different terms, asserting that section 1359 "does not bar jurisdiction over a suit by the *real* owner of a claim, even if that owner acquired the claim with a motive to invoke the jurisdiction of a federal court." Obj. at 15 (emphasis in original). FSMS relies primarily on a footnote in *Lester v. McFaddon*, a case involving the appointment of an estate administrator to create diversity. Obj. at 15; *Lester v. McFaddon*, 415 F.2d 1101 n.11 (4th Cir. 1969).

FSMS's argument suffers from several flaws. First, *Lester* and its progeny dealt with a narrow factual scenario involving the appointment of nominal parties

<div align="center">16</div>

(typically as estate administrators), but this case is about an outright assignment of an ownership interest in the plaintiff. Cases addressing appointments do not control, and citing those inapposite cases ignores the fundamental differences between an appointment or assignment of a claim (where the transfer creates a new plaintiff) and assignment of an interest in the plaintiff (where the plaintiff necessarily retains an interest in the claim because the transfer does not create a new plaintiff). This distinction makes FSMS's proposed litmus test useless for the purpose of separating valid and invalid transactions under section 1359.

To be sure, section 1359 prohibits appointments of nominal parties or assignments of claims to create diversity, and *Lester* confirms this point. But the Fourth Circuit in *Lester* did not require a district court to evaluate an assignment of an ownership interest under the same rubric applicable to the appointment of a nominal party or the assignment of a claim. As the Supreme Court explained in *Kramer*, section 1359 precedent addressing one factual situation does not necessarily apply to materially different factual situations. *See Kramer*, 394 U.S. at 828 n.9 ("Cases involving [appointed] representatives vary in several respects from those in which jurisdiction is based on assignments").

Second, even in the narrow scenario where it applied, the viability of *Lester*'s rule was questioned by other cases before being supplanted by statute.[9] Several years

---

[9] Congress addressed the potential for jurisdictional manipulation by appointments of estate administrators when it amended the diversity statute in 1988. *See* Pub. L. No. 100-702 § 202, 102 Stat. 4642, 4646 (1988) (codified as amended at 28 U.S.C. § 1332(c)(2)). The amended section 1332(c)(2) supplants *Lester* and other cases addressing such appointments. FSMS's reliance on pre-amendment cases to bolster *Lester* is unpersuasive. Obj. at 15-17 (citing multiple cases from 1881 – 1914).

after *Lester* was decided, courts recognized that the Fourth Circuit had "abandoned" the *Lester* test, or at least declined to apply it in other factual situations. The Fourth Circuit held in *Bishop v. Hendricks,* 495 F.2d 289 (4th Cir. 1974) that the lack of a stake in the litigation alone was enough to violate section 1359, even without a collusive motive. *Id.* at 296–97. In other words, *Bishop* suggests that a finding of either "no stake" or a "collusive motive" is enough to trigger section 1359. *See also Pallazola v. Rucker*, 797 F.2d 1116, 1121 n.13 (1st Cir. 1986) (noting that the "Fourth Circuit applied the motive/function test in [*Lester*] but apparently abandoned it in *Bishop*"); *Bianca v. Parke-Davis Pharm. Div. of Warner-Lambert Co.*, 723 F.2d 392, 395, 397 (5th Cir. 1984) (explaining that the Fourth Circuit adopted the "motive/function" rule in *Lester* and then "[i]n *Bishop v. Hendricks,* the Fourth Circuit abandoned this 'motive' test in favor of a 'substantial stake' test").

Third, FSMS's assertion that the Fourth Circuit in *In re Bestwall LLC*, 71 F.4th 168 (4th Cir. 2023), mandated the application of *Lester*'s supposed "two-factor rule" is incorrect. Obj. at 2, 19. *Bestwall* cited *Lester* as an example of a section 1359 violation, 71 F.4th at 180, but was not purporting to define the bounds of what might be one. Instead, *Bestwall* explained that "using [either] a strawman, **or sham transactions**, solely for the creation of otherwise unobtainable jurisdiction, is clearly forbidden both by statute and by the policies that underlie diversity jurisdiction." *Id.* at 181 (emphasis added).

Finally, FSMS's attempt to convert the logic and holding of cases involving assignments of claims or appointments of nominal parties (like *Lester*) into the

standard test applicable to all section 1359 issues in the Fourth Circuit does not survive a careful examination of the case law, as Judge Metcalf recognized. M&R at 6-12. To start, in *Tee Feral* the Fourth Circuit affirmed a district court's dismissal under section 1359 even though the plaintiff had an interest (in fact, the only interest) in the claim being asserted because the plaintiff acquired the claim through a merger effected to create diversity jurisdiction. 2022 WL 17546943 at *2. The *Tee Feral* court quoted *Lester* and did not view its decision as inconsistent with it. *Id.* at *1 (citing *Lester*, 415 F.2d at 1106). Notably, *Tee Feral* never applied what FSMS considers to be the "test" in *Lester*, instead relying on *Kramer*'s focus on motive, explaining that the "manufacture of federal jurisdiction was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors." *Id.* at *2 (quoting *Kramer*, 394 U.S. at 829). Consistent with the Fourth Circuit's approach in *Tee Feral*, Judge Metcalf relied on *Bugsby*, *Gulf Fleet*, and *Castillo*, discussed above, which also focused on the motive behind the assignments.

FSMS's notion that the Fourth Circuit splits from other circuits by requiring that the plaintiff have no stake in the outcome cannot be reconciled with the sizeable body of decisions, both pre-dating and post-dating *Kramer*, none of which hold that a stake in the outcome insulates a transfer with a collusive motive from a section 1359 violation. *See, e.g.*, *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 918-19 (8th Cir. 2015) (violation of section 1359 by merger of corporations, with diverse entity surviving); *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 645 (1st Cir. 1995) (same); *see also Miller & Lux, Inc. v. E. Side Canal & Irrigation Co.*, 211 U.S. 293, 305-06

<div align="center">19</div>

(1908) (section 1359 violated by transfer of property between corporations with common shareholders), *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 330-31, 343-43 (1895) (same). Thus, as the Recommendation indicates, *Lester* should be understood as (1) illustrating one instance in which the Fourth Circuit found a violation of section 1359; and (2) addressing two factors that courts may consider as part of the multi-factor analysis. *See* M&R at 19; *see also Long & Foster*, 357 F. Supp. 2d at 922-23 (listing "whether the assignor retains any interest in the action" and "whether the assignee had any previous connection to the assigned claim" among ***six*** factors).

Finally, even if *Lester* had set forth a "two-factor" test, and even if that test applies here (it does not), Tong's assignment would trigger section 1359. FSMS emphasizes that it is the "real party in interest" because it "did business with Tanner." Obj. at 15. But the entity that did business with Tanner had Tong as a member, and Tong still stands to benefit from any recovery. And as Judge Metcalf correctly observed, the assignment here "involved few disadvantages." M&R at 18. Tong's assignment of her interest in FSMS to Mao was easy to arrange, effected in short order (evidently in less than 24 hours), and created no economic disadvantages for Tong because of her community property rights under California law. Dkt. No. 39, at 27-28. Tong retained the economic benefits of her interest after the transfer and her husband gained no new economic benefits because of the transfer. This is exactly the situation section 1359 was enacted to prevent. FSMS cannot avoid the application

20

Case 3:25-cv-00102-MOC-WCM   Document 53   Filed 03/17/26   Page 25 of 29

of the statute by invoking cases involving materially dissimilar factual situations and then arguing that violations of section 1359 are limited to the facts in those cases.[10]

### C.    FSMS's Merits Arguments Are Irrelevant and Incorrect

By advancing a one-sided recitation of its underlying claims, FSMS implicitly suggests that allowing its membership manipulation to "moot out" its jurisdictional problem is justified. Not so. As noted above, *supra* note 3, Defendants vigorously dispute FSMS's characterization of the facts, and Defendants have asserted fraud and negligent misrepresentation counterclaims against FSMS. FSMS I, Dkt. No. 228. But the merits of the dispute do not impact the section 1359 analysis.

In any event, FSMS can only blame itself for pursuing these cases in federal court for over three years while failing to verify the citizenship of one of its four members and falsely certifying that diversity jurisdiction existed. The Supreme Court has routinely required cases to be dismissed, even after trial, when jurisdiction is lacking. *See e.g.*, *Kramer*, 394 U.S. at 827-28 (dismissing the case after a jury verdict for violating section 1359). FSMS did not verify a basic jurisdictional fact while engaging instead in years of contentious litigation and such prolific motion-filing (even before FSMS disclosed the jurisdictional defect) that the Court had to postpone

---

[10] Apart from citing cases addressing inapposite factual situations, FSMS relies on outdated and discredited cases. As a New York district court recently explained, even in cases involving assignments of claims (not assignments of interests in a party), after *Kramer*, the "cases have confirmed that whether the assignor retains an interest in the subject matter is merely a factor to consider in the analysis . . . ." *Alix v. McKinsey & Co.*, 470 F. Supp. 3d 310, 320 (S.D.N.Y. 2020) (citing *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469 (2d Cir. 1976) (cleaned up)). The *Prudential* and *Alix* decisions are consistent with the Fourth Circuit's decision in *Tee Feral*, which did not apply a formulaic analysis to uphold jurisdiction simply because the plaintiff had full ownership of the claim being asserted.

summary judgment briefing and take both of FSMS's prior cases off the trial calendar.[11]

Proceeding with this action in the shadow of section 1359 would promise more of the same, and a potential multi-week trial, as a prelude to a potential post-trial appeal to definitively resolve the jurisdictional question. After all, the lack of subject matter jurisdiction can be raised by any party at any time.

Finally, it bears noting that FSMS is pursuing other options. On March 3, 2025, FSMS filed yet another action, this time in Texas state court against Orient Gene (the Chinese test kit manufacturer) and its U.S. subsidiary. FSMS alleges those parties breached a contract with FSMS by working with the Tanner Defendants. *FS Medical Supplies, LLC v. Zhejiang Orient Gene Biotech Co., Ltd. & Healgen Scientific, LLC*, No. 25-BC11A-0012 (Bus. Ct. Tex., 11th Div.); *FS Medical Supplies, LLC v. Zhejiang Orient Gene Biotech Co., Ltd. & Healgen Scientific, LLC*, No 4:25-cv-01332 (S.D. Tex.). In this action and the Texas action, FSMS seeks duplicative damages from different sets of defendants.

## CONCLUSION

Section 1359 prohibits FSMS's manipulative assignment to manufacture diversity jurisdiction. For all the foregoing reasons, Defendants respectfully ask the Court to adopt Judge Metcalf's Memorandum and Recommendation and dismiss this action for lack of subject matter jurisdiction.

---

[11] *See* FSMS I, Dkt. No. 281 (order entered in both actions but only filed in FSMS I).

22

This the 17th day of March, 2026.

| | |
|---|---|
| **MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP** | **Rᴏʙɪɴꜱᴏɴ, Bʀᴀᴅꜱʜᴀᴡ & Hɪɴꜱᴏɴ, P.A.** |

By: */s/ Bradley R. Kutrow*        By: */s/ Robert W. Fuller*

Bradley R. Kutrow                    Robert W. Fuller
N.C. State Bar No. 13851          N.C. Bar No. 10887
Brian A. Kahn                        Amanda P. Nitto
N.C. State Bar No. 29291          N.C. Bar No. 45158
Jessica O'Brien Peretz             Anna Claire Tucker
N.C. State Bar No. 56679          N.C. Bar No. 59457

201 North Tryon Street, Suite 3000    600 S. Tryon Street, Ste. 2300
Charlotte, NC 28202-2146        Charlotte, North Carolina 28202
Telephone: (704) 343-2049       Telephone: 704.377.2536
Facsimile: (704) 343-2300       Facsimile: 704.378.4000
bkutrow@mcguirewoods.com     rfuller@robinsonbradshaw.com
bkahn@mcguirewoods.com       anitto@robinsonbradshaw.com
jperetz@mcguirewoods.com      atucker@robinsonbradshaw.com

Mark E. Anderson                 *Counsel for Defendants Raymond*
N.C. State Bar No. 15764         *Fairbanks Bourne and Mary Everett*
501 Fayetteville Street, Suite 500   *Whitehurst Bourne*
Raleigh, NC 27601
Telephone: (919) 755-6678
Facsimile: (919) 755-6699
manderson@mcguirewoods.com

Anne Doherty
N.C. State Bar No. 55494
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7633
Facsimile: (804) 775-1061
adoherty@mcguirewoods.com

*Counsel for Defendants TannerGAP,*
*Inc. and Tanner Pharma UK Limited*

23

# <u>ARTIFICIAL INTELLIGENCE CERTIFICATION</u>

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

- No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

- Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This 17th day of March, 2026.

<div align="center" style="margin-left:40%">

<u>s/ Robert W. Fuller</u>
Robert W. Fuller

</div>

24